IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RANDY POPE                                                                   PLAINTIFF

VS.                                              CIVIL ACTION NO: 1:02cv99WJG-JMR

ANTHONY KALLAS and CITY OF
LONG BEACH                                                 DEFENDANTS

<u>MEMORANDUM OPINION</u>

This cause is before the Court on the motion for summary judgment [78-1] filed by the Defendant, City of Long Beach [Long Beach], pursuant to Federal Rule of Civil Procedure 56. After due consideration of the pleadings, evidence of record, applicable law, and being otherwise advised in the premises, the Court finds as follows.

<u>Statement of Facts</u>[1]

On February 6, 2001, Officer Anthony Kallas was dispatched to investigate a fight in progress on St. Augustine Avenue, Long Beach, Mississippi, between the neighboring Pope and Cuevas families. Prior to this time, Kallas had been notified by the Long Beach Police Department that Tina and Michael Cuevas had filed a report of alleged child molestation against Plaintiff's minor son. When Kallas arrived on the scene, Plaintiff's wife, Travis Ann Pope and Tina and Michael Cuevas were outside.

Kallas was told by Tina Cuevas that there had been a dispute between the two families stemming from the sexual molestation allegations. According to Tina Cuevas, the altercation

---

[1] The Court's recitation of facts derive from those noted in the Memorandum Opinion, (Ct. R., Doc. 48), entered September 29, 2003, which facts the Court finds unchanged.

began when one of Pope's daughters threw a doll at the Cuevas' three-year old daughter and called Tina Cuevas a "lying whore." Some time later, Pope arrived on the scene and began threatening physical harm against Michael Cuevas. Pope moved toward the Cuevas' house but was prevented by his family members from doing harm to Michael Cuevas. Pope's family physically restrained him until they all ended up in a pile on the lawn, at which point Pope retreated to his house and went to bed.

When Kallas arrived, Pope was inside, and Kallas separated the families and informed the Cuevas' to have no further contact with the Popes. Kallas intended to do likewise with the Popes and asked entrance to the Pope residence for that purpose. Like much of the facts, it is disputed whether Kallas was given permission to enter the Pope home. Regardless, Pope entered the home and requested to speak with Pope, who was in the bedroom sleeping. Kallas informed the Pope family to retrieve Pope from the bedroom. At each attempt, Pope refused to come out of the bedroom, using profanity to punctuate his resistance. Finally, Pope emerged from the bedroom and walked down the hall toward Kallas and his family.

Kallas maintains that Pope was staggering down the hall and smelled of alcohol. Kallas attempted to inform Pope to stay away from the Cuevas family but was unable to fully deliver his warning because Pope became increasingly belligerent, screaming profanities and ordering the police out of his house. During this time, two other officers had joined Kallas in the home. Kallas repeatedly ordered Pope to calm down, but Pope continued to curse and insist that the officers leave his home. Pope's wife attempted to calm him down, but using profanity, he told her to "shut up" that he did not have "to listen to them in my own house."

2

Pope turned his back on the officers and began staggering back to his bedroom, at which point Kallas decided to arrest Pope. Kallas maintains that he informed Pope that he was under arrest and instructed him to place his hands behind his back. Kallas placed hands on Pope, who began to struggle. Kallas forced Pope to the floor, and Pope passively resisted by locking his hands under his body in an attempt to avoid cuffing. Kallas applied pepper spray, and Pope complied with the arrest. After being transported to the station, Pope voluntarily took an intoxilizer test and registered legally drunk at 0.194.

Notably, much of what transpired outside and inside the Pope residence is disputed. Particularly, Pope disagrees over Kallas' recollection of Kallas' behavior in addressing Pope and his family and the particulars of the entry to his home and arrest. Such material disputes shall be addressed as necessary herein.

Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). All disputed facts are resolved in favor of the party opposing the summary judgment. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). The nonmoving party may not rely upon mere allegations or denials within the pleadings, but must come forward with specific facts showing the presence of a genuine issue for trial. *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). "Summary

judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment." *Id.* at 709. Once a properly supported motion for summary judgment is presented, however, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir. 1978).

## Discussion

Except for malicious prosecution as a constitutional violation, which has been dismissed regarding Kallas (Ct. R., Doc. 58, pp. 8-9), Plaintiff alleges against Long Beach claims for false arrest, false imprisonment, slander by way of wrongful arrest, invasion of privacy, negligence, actionable retaliation for the exercise of constitutionally protected rights, excessive force, assault, battery and intentional infliction of emotional distress. (Compl., ¶ 10.) Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 and the Mississippi Tort Claims Act. (*Id.* ¶¶ 16, 17.) The Court will address the federal and state claims in turn.

I.      42 U.S.C. § 1983

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Municipal liability under section 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose ''moving force'' is the policy or custom. *Cox v. City of Dallas, TX*, 430 F.3d 734, ___ (5th Cir. 2005). Additionally, a plaintiff must prove that

the municipality acted with conscious indifference to the rights of the plaintiff. *Languirand v. Hayden*, 717 F.2d 220, 227-28 (5th Cir. 1983). Even assuming a violation of Plaintiff's constitutional rights, neither Plaintiff's Complaint nor Memorandum, (Ct. R., Doc. 85), identifies any of the elements required.

Plaintiff claims that Long Beach should have known that Kallas would violate someone's constitutional rights and that the city failed to properly train or supervise Kallas. (Compl., ¶¶ 18, 19.) Notably, Plaintiff did not sue the Chief of Police alleging a direct failure to supervise or train Kallas. Rather, Plaintiff sued Long Beach, a municipality. A municipality is liable only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).

Although Plaintiff has named Long Beach as a party, Plaintiff has failed to identify an actual policymaker or an official policy that condones or authorizes unlawful entry, false arrest, excessive force or any other constitutional violation. Equally, Plaintiff does not point to a widespread practice of relevant constitutional violations that would amount to a custom constituting official policy. Plaintiff provides only three instances prior to February 6, 2001, as evidence of constitutional violations committed by Kallas. Two instances, presumably relating to excessive force, are offered through two documents, each entitled "Use of Force Report," wherein it is noted that Kallas resorted to open hand control or intermediate control to effect an arrest. (Ct. R., Doc. 81, Part 5, Exhs. 9-10.) In each instance, however, the arrestee was engaged in active aggression before being subdued. (*Id.*)

The final instance relates to Kallas' entry into the Pope home to deliver a "verbal restraining order." Pope contends that police officers have no authority to issue such restraining order, and that Long Beach knew this after receiving an opinion from the Attorney General noting that only courts of competent jurisdiction have authority to issue restraining orders. Pope adds that Long Beach failed to inform Kallas of this opinion and thereby failed to properly train Kallas. Whether addressing excessive force or unlawful entry, such few and isolated instances by a single officer do not create an accepted custom.

> Regarding municipal liability, the Fifth Circuit has stated in pertinent part:
>
> [A] municipality is not liable under section 1983 for the negligence or gross negligence of its subordinate officials, including its chief of police, in failing to train the particular officer in question, in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force.

*Languirand*, 717 F.3d at 227-28. Three disparate instances involving a single officer does not amount to a pattern for which a municipality may be held liable under section 1983. Further, Plaintiff offers no evidence of other relevant conduct by Kallas or any other officer. Such singular instances do not amount to a pattern, nor would such conduct offer the policymaker – had Plaintiff identified one – actual or constructive knowledge that the police force had developed a custom of particular constitutional violations. *See Cox*, 430 F.3d at ___ (policymaker must have either actual or constructive knowledge of the alleged policy).

Additionally, Plaintiff has not identified Kallas' supervisor, how any lapse in supervision caused the alleged constitutional violation or how better supervision might have prevented the alleged injury. Equally, Plaintiff has failed to identify any training program, the training deficiencies, any fault with Kallas' training, how better training might have prevented the alleged

6

injury or how deficient training caused the alleged constitutional violation. Finally, Plaintiff has offered no evidence that Long Beach acted with deliberate indifference to the constitutional rights of its citizens. Consequently, the Court finds that there are no genuine issues of material fact, and Long Beach is entitled to summary judgment on Pope's section 1983 claims.

II.     State Law Claims

In reviewing Long Beach's motion for summary judgment, the Court will address three particular areas as argue by Long Beach: (1) probable cause; (2) excessive force; and (3) the Mississippi Tort Claims Act.

    A.     Probable Cause

Long Beach asserts that they are entitled to summary judgment because Kallas had probable cause to arrest Pope for his actions both inside and outside the Pope residence. Long Beach's arguments relating to probable cause were briefed in the context of a section 1983 claim. The United States Constitution does not require a warrant for misdemeanors not occurring in the presence of an arresting officer, but that is not the case pursuant to Mississippi law. *Fields v. City of S. Houston, TX*, 922 F.2d 1183 (5th Cir. 1991). Except in cases of domestic violence, Mississippi requires a warrant to arrest for misdemeanors not occurring within an officer's presence. MISS. CODE ANN. 99-3-7. The Court will first examine Pope's actions outside his house to determine whether Kallas possessed the necessary authority to make an arrest.

When Kallas arrived at St. Augustine Avenue, Travis Anne Pope and Tina and Michael Cuevas were standing in the yard talking to one another. Kallas separated the families and spoke with each, learning, essentially, that Pope, in a drunken and profanity laced tirade, had threatened Michael Cuevas but was prevented from carrying out his threats by members of Pope's family.

Pope had retreated inside his home and gone to bed by the time Kallas arrived. From these essential facts, Long Beach asserts that Kallas had probable cause to arrest Pope for simple assault upon Michael Cuevas under section 97-3-7(1), domestic violence against his wife and children as they tried to stop his advance against Michael Cuevas under section 97-3-7(3), disturbing the peace of the Pope and Cuevas families under section 97-35-9 and public intoxication, presumably, under section 97-29-47.

Each of the offenses asserted by Long Beach, however, are misdemeanors and would require a warrant for the arrest of Pope because Kallas did not witness any of the alleged conduct. MISS. CODE ANN. 99-3-7. The only possible exception would be for domestic violence as provided by section 99-3-7, which states in pertinent part:

> Any law enforcement officer shall arrest a person with or without a warrant when he has probable cause to believe that the person has, within twenty-four (24) hours of such arrest, knowingly committed a misdemeanor which is an act of domestic violence.

MISS. CODE ANN. 99-3-7(3)(a). Additionally, section 99-3-7 states:

> [T]he phrase "misdemeanor which is an act of domestic violence" shall mean one or more of the following acts between family or household members who reside together or formerly resided together, current or former spouses, persons who have a current dating relationship, or persons who have a biological or legally adopted child together.

MISS. CODE ANN. 99-3-7(5).

Sparse evidence exists to indicate that Kallas reasonably believed that Pope committed an act of domestic violence. The words used and the things done are the gist of an offense. *Taylor v. State*, 396 So. 2d 39, 41 (Miss. 1981). Particularly, Kallas was not presented evidence that Pope caused or attempted to cause bodily injury to a member of his family or that his anger was

8

directed at any member of his family. By all accounts, Pope's family members assertively prevented him from assaulting Michael Cuevas, the object of Pope's rage.

Additionally, Kallas did not attempt to arrest Pope for any act of domestic violence that allegedly occurred outside the Pope residence. Particularly, section 99-3-7(3)(a) compels an officer to make an arrest when probable cause exists that the suspect has committed an act of domestic violence. There is no evidence to suggest that Kallas harbored such a belief regarding Pope's conduct on the lawn. Indeed, Kallas sought entry to the Pope residence to issue a warning to Pope, not to arrest him. Simply put, Long Beach has not met its burden of demonstrating that Kallas believed, based on probable cause, that Pope had committed an act of domestic violence.

After Kallas separated the families, he desired to enter the Pope home and inform the family members not to have any further contact with the Cuevas family, upon pain of arrest. Given that Kallas did not have probable cause to arrest Pope, he required permission to enter the Pope home. *See Williams v. Lee County Sheriff's Dept.*, 744 So. 2d 286, 295 (Miss. 1999) (finding that police did not need permission to enter residence to arrest suspect where arrest was supported by probable cause). Whether consent was given is hotly contested, and a genuine issue of material fact exists regarding this matter.

Next, the Court examines the actions inside the home to determine whether Kallas had authority to arrest Pope. In undertaking the next phase of the analysis, the Court is mindful that, viewing all disputed facts in favor of Pope, Kallas did not have probable cause to arrest Pope for the actions that took place outside the residence and that Kallas, having failed to obtain consent, had unlawfully entered the Pope home.

The Court recognizes, as it has in its prior opinions in this case, that Kallas arrested Pope for conduct that occurred in the home. Particularly, Kallas arrested Pope because he was intoxicated, belligerent, used profanity and refused to comply with Kallas' commands to calm down and have no further contact with the Cuevas family. Long Beach contends that such behavior provided ample authority for Kallas to arrest Pope. Pope was ultimately charged with disturbance of family, failure to comply with the command of a law enforcement officer and resisting arrest pursuant to sections 97-35-9, 97-35-7 and 97-9-73, respectively.

Section 97-35-9 states:

> A person who wilfully disturbs the peace of any family or person by an explosion of gunpowder or other explosive substance, or by loud or unusual noise, or by any tumultuous or offensive conduct, shall be punished by fine or imprisonment, or both; the fine not to exceed one hundred dollars, and the imprisonment not to exceed six months in the county jail.

MISS. CODE ANN. § 97-35-9. Evidence indicates that Pope was belligerent and used profanity as he emerged from his bedroom to find the officers in his home. Kallas maintained that he tried several times to calm Pope down and inform him to stay away from the Cuevas', only to be thwarted by Pope's profanity and bellicose attitude toward the officers. Pope's wife attempted to calm Pope down, but using profanity, he told her to "shut up" that he did not have "to listen to them [the police] in my own house."

The exchange between Pope and his wife underlies the charge of disturbing the family. The threshold question is whether Kallas had probable cause to initiate an arrest, i.e. whether it was evident to him at the time that a breach of the peace was being threatened or a crime was being committed in his presence. *Jones v. State*, 798 So. 2d 1241, 1247 (Miss. 2001). The Court cannot conclude that Kallas had probable cause to think that a breach of the family peace was

imminent.  From the outset, Pope's anger was focused on Kallas.  Even after telling his wife to shut up, Pope immediately followed with the position that he did not have to listen to Kallas in his own home.  The presence of the officers was plainly the focus of Pope's outrage.

Nor does the fact that Pope used profanity provide probable cause or the foundation for arrest.  Pope's profanity, particularly that addressed to his wife, cannot be consider "fighting words" and thus, cannot provide probable cause for an arrest.  *Odom v. State*, 881 So. 2d 940, 947-48 (Miss. Ct. App. 2004); *see Taylor*, 396 So. 2d at 42 (finding that no statute prohibited a citizen from being drunk and using profanity in own home).  The Court finds that Long Beach has failed to satisfy its burden of demonstrating that Kallas believed, based on probable cause, that Pope had committed or was about to commit a breach of his families peace.

> Section 97-35-7 provides in pertinent part:
>
> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
>
> (I) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor . . . .

MISS. CODE ANN. § 97-35-7(1)(I) (emphasis added).  Citizens must obey the reasonable instructions of police officers.  *Bovan v. State*, 706 So. 2d 254, 257 (Miss. Ct. App. 1997).  The Mississippi Supreme Court has held, however, that a citizen may resist his own unlawful arrest or the unlawful entry and search of his own home.  *Smith v. State*, 208 So. 2d 746, 747 (Miss. 1968); *Pettis v. State*, 48 So. 2d 355, 356-57 (Miss. 1950); *Bovan*, 706 So. 2d at 256-57.

The ultimate determination depends upon the officer's authority to issue the command and the reasonableness thereof.  In the present matter, Kallas had made an unlawful entry into the home, was not possessed of probable cause to make any arrest and commanded Pope to calm down so that Kallas could issue an unlawful, verbal restraining order, i.e. that Pope have no further contact with the Cuevas family upon pain of arrest.  *See* Atty. Gen. Op. (Carrubba), No. 2000-0588, 2000 WL 1648390 at *3 (Oct. 6, 2000).  Given the circumstances, the Court cannot conclude that Kallas had authority to issue his command and that said instructions may be deemed reasonable.  Consequently, the Court finds that Long Beach has failed to satisfy its burden of demonstrating that Kallas believed, based on probable cause, that Pope had committed or was about to commit a breach of the peace for failure to follow the commands of a law enforcement officer.

Regarding the charge of resisting arrest, it is fundamental in Mississippi that a citizen has the right to use reasonable force to resist an unlawful arrest.  *Taylor*, 396 So. 2d at 42.  Having found that Kallas lacked authority to arrest Pope, all evidence of acts of resisting the unlawful arrest are excluded and beyond this Court's review.  *Jones*, 798 So. 2d at 1248.  Consequently, the Court finds that Long Beach has failed to demonstrate that Kallas had probable cause to charge Pope with resisting arrest.

Long Beach has urged this Court to find that Kallas possessed probable cause to enter Pope's home and arrest him.  Long Beach's opposition to Pope's state law claims for false arrest, false imprisonment, slander by way of wrongful arrest, invasion of privacy, actionable retaliation for the exercise of constitutionally protected rights, assault and battery was premised on the existence of probable cause.  The Court finds that Long Beach failed to satisfy its burden that no

genuine issues of material fact existed regarding probable cause, and therefore, Long Beach is not entitle to judgment as a matter of law.

      B.    <u>Excessive Force</u>

This Court has previously found that Kallas' use of force to effect Pope's arrest presented genuine issue of material fact. (Ct. R., Doc. 48, pp. 14-15.) The Court's considerations today only serve to undergird its prior holding. Long Beach has presented nothing to sway the Court's opinion on this matter, including testimony of the city's expert witness, that Kallas' use of force was reasonable.

Long Beach also contends that Pope's injuries are *de minimis*. It is unclear whether Long Beach intended this argument to apply both to Pope's section 1983 claim and state law claim for excessive force. Equally unclear is whether Mississippi utilizes the *de minimis* doctrine in state law excessive force claims. A brief inquiry has not revealed to this Court any such application.

Regardless, the Court finds that under the circumstances the question of *de minimis* injury presents a genuine issue of material fact that precludes summary judgment. The physical force employed by officer Kallas, as well as the use of pepper spray and the alleged failure to offer relief, may have caused pain that could be characterized as more than *de minimis* injury. Consequently, the Court finds that Long Beach has failed to sustain its burden of proving an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.

      C.    <u>Mississippi Tort Claims Act</u>

Section 11-46-9 of the Mississippi Tort Claims Act reads in pertinent part:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .
> (c) Arising out of any act or omission of an employee of a governmental entity

>engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury . . . .

MISS. CODE ANN. § 11-46-9(1)(c).  Long Beach offers the above section as grounds for granting summary judgment on Pope's state law claims.  Given the Court's finding herein that Kallas lacked authority to enter Pope's home or to arrest him and that Pope could resist an unlawful arrest, the Court finds that Pope was not engaged in criminal activity at the time of his alleged injuries.  Finally, under the circumstances, a genuine issue of material fact exists concerning whether Kallas acted in reckless disregard for the safety and well-being of Pope.

The Court finds that Long Beach failed to satisfy its burden that Pope was engaged in criminal activity at the time of his alleged injury or that Kallas did not act in reckless disregard of the safety and well-being of Pope. Consequently, the Court finds that Long Beach has failed to sustain its burden of proving an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.

## Conclusion

For the reasons given above, this Court finds that Long Beach's motion for summary judgment [78-1] should be granted in part and denied in part.  A separate summary judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date.  Each party shall bear their respective costs associated with this motion.

THIS the 16th day of January, 2006.

           *Walter J. Gex III*
           UNITED STATES SENIOR DISTRICT JUDGE